```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

| | |
|---|---|
| **JOSE RUIZ and SANDRA RUIZ,** | |
| Plaintiffs, | Case No. 09 C 7358 |
| v. | Hon. Harry D. Leinenweber |
| **JOHN KINSELLA, SIDNEY DIAMOND, FCL BUILDERS, INC., DAN JANUSZYK, CITY OF CHICAGO, STAN-LEE RADERBEK, JOHN KNIGHT, MARK LIMANNI, and RALPH SCHMIDT,** | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court are the Motions to Dismiss filed by Defendants John Kinsella, Sidney Diamond, FCL Builders, Inc., Dan Januszyk, Stan-Lee Kaderbek, Mark Limanni, and the City of Chicago (hereinafter, the "Defendants"). For the reasons explained below, the Court grants the Motions and dismisses with prejudice Counts I, II, III, VIII, and IX in Plaintiffs' Second Amended Complaint against all Defendants, including John Knight and Ralph Schmidt, and declines to exercise supplemental jurisdiction over the pendent Illinois state law claims in Counts IV, V, VI, and VII.

### I. INTRODUCTION

Plaintiffs Jose and Sandra Ruiz (hereinafter, the "Plaintiffs") probably never anticipated that buying houses in the Bridgeport Village ("BV") multi-house development in Chicago would

spiral into federal litigation that would include Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil rights, and substantive and procedural due process claims. Development of BV began in 2000, when JS II, LLC purchased the site property from the City of Chicago. JS II and River Village I, LLC collaborated to build the development. On June 30, 2003, Plaintiffs closed on their first BV house, in which they reside. On March 10, 2006, they closed on their second BV house. Due to structural deficiencies in this second property, Plaintiffs never lived in this house, and the bank foreclosed on its mortgage on July 31, 2008. Plaintiffs allege that this property would not have gone into foreclosure but for a series of conspiracies and cover-ups by Defendants that led to the construction of BV houses with building code violations, which were deliberately concealed from purchasers and the general public.

Between May 2002 and November 2004, the City of Chicago allegedly issued 78 stop work orders to the BV developers. City inspectors found numerous permit violations during a November 2004 inspection of BV houses, and in its stop work order the City gave Thomas Snitzer ("Snitzer"), a manager of the development, a list of conditions that the developers had to meet for the City to lift the orders. By January 2005, the developers did not meet these conditions, which led to the City reimposing the orders. At a public meeting on March 10, 2005, called by Defendant Stan-Lee Kaderbek ("Kaderbek"), the Chicago Building Commissioner, BV

homeowners were allegedly informed that (1) they should have their houses inspected for building code violations; (2) the homeowners would be responsible for remedying these violations, and they should contact the developer for redress if they incur costs; and (3) the City would issue an occupancy certificate once a house passed a City inspection.

In May 2005, Kaderbek commissioned the engineering firm Wiss, Janney, Elstner Associates, Inc. to conduct a structural design analysis of the Federal and Lincoln Park BV house models. The report found that these models did not meet the City's building code for lateral load resistance, and that the Federal model presented safety issues. The report recommended the installation of exterior structural steel gates as a cost-effective and adequate remedy to this problem. Plaintiffs allege that several of the Defendants met to discuss this report after it issued.

In June 2005, Snitzer was removed as a manager of the development. Thereafter, Defendants John Kinsella ("Kinsella") and Sidney Diamond ("Diamond"), the managers of JS II and River Village I, met with Kaderbek and Defendant Mark Limmani ("Limmani"), Assistant Corporation Counsel for the City of Chicago, and signed an agreement that allegedly released BV from the stop work orders. This allowed the developers to resume construction. Although Plaintiffs state that the developers subsequently met with the City to discuss the steel gate remedy for the structural defects, Plaintiffs allege that the City lifted the BV stop work

orders in a manner that allowed construction of houses that did not satisfy the building code.

Plaintiffs obtained a March 8, 2006, letter from masonry contractor Brickcraft, Inc. that alleged structural deficiencies with BV houses. They possessed this letter at their March 10, 2006, closing for their second BV house, and nevertheless proceeded with the closing, as they allege that JS II's attorney threatened them with litigation if they pulled out of the contract. A month later, Plaintiffs discovered water damage in the newly purchased house. They also discovered that the house's main waste line did not connect to the city's sewer system. At an April 25, 2006, meeting for BV homeowners, Plaintiffs were informed that their house failed the building code because it did not meet the required lateral wind load resistance. They also learned of the proposed structural gate remedy. After the meeting, Plaintiffs refused to sign a document taking responsibility for building code violations, which was required to obtain a certificate of occupancy.

Plaintiffs engaged in a series of communications with Defendants regarding the necessary repairs for their house. This included communications with Defendant Dan Januszyk ("Januszyk"), the Construction Manager for Defendant FCL Builders, Inc., which built the BV houses. Januszyk confirmed some of the necessary repairs for the house. JS II also agreed to reimburse Plaintiffs for out-of-pocket expenses they incurred, including mortgage payments. JS II agreed to pay for the structural gates to fix the

load resistance issue, but Plaintiffs insisted that they would not accept the structural gates as the remedy. In November 2006, JS II informed Plaintiffs that it would no longer make mortgage payments on the house. In March 2007, JS II and River Village I filed for bankruptcy protection. Plaintiffs filed a creditor claim on June 4, 2007, alleging breach of contract/warranty, breach of implied warranty of habitability, a violation of the Illinois Consumer Fraud Act, common law fraud, conspiracy to commit fraud, and negligence. The bank foreclosed on Plaintiffs' second BV house on July 31, 2008. Plaintiffs withdrew their claims against JS II and River Village I with prejudice prior to an October 14, 2008, hearing in Bankruptcy Court.

Plaintiffs filed this action on November 23, 2009. They filed an Amended Complaint on May 12, 2010, and the nine-count Second Amended Complaint on September 10, 2010. Count I alleges a 18 U.S.C. § 1962(c) RICO violation; Count III alleges a RICO conspiracy in violation of 18 U.S.C. § 1962(d); Count II alleges a civil rights conspiracy in violation of 42 U.S.C. § 1985(3); Count VIII alleges a procedural due process violation; and Count IX alleges a substantive due process violation. Counts IV, V, VI, and VII raise Illinois state law claims of civil conspiracy, common law fraud, a violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and negligent misrepresentation, respectively. Defendants Kinsella, Diamond, FCL

Builders, Januszyk, Kaderbek, Limanni, and the City of Chicago have moved to dismiss all counts.

## II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) Motion to Dismiss, a complaint must contain "sufficient facts to state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). A pleading must set forth "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." FED. R. CIV. P. 8(a). The Court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in a light favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Although a complaint does not need detailed factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *See id.* at 555. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-51 (2009). It is important to note that *Twombly* and

*Iqbal* have not reinstated a fact-pleading system. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id*.

## III. ANALYSIS

### A. RICO Claims

Plaintiffs claim that Defendants Kaderbek, Knight, Limanni, Schmidt, and the City of Chicago violated § 1962(c) of RICO (Count I) and engaged in a conspiracy to violate § 1962(c), unlawful pursuant to § 1962(d) (Count III). Defendants Kaderbek, Limanni, and the City of Chicago have moved to dismiss these Counts.

In regard to Count I, a RICO violation requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990). An analysis of the first three factors is unnecessary here, as Plaintiffs, despite filing a factually detailed 74-page, 242-paragraph narrative complaint, have not pled the necessary racketeering predicate act. (Plaintiffs are reminded that federal courts retain notice pleading, and the Court could dismiss the Second Amended Complaint as a violation of Federal Rule of Civil Procedure 8(a). *See id*.) Plaintiffs allege that Defendants' racketeering activity included the Illinois state law crime of

- 7 -

intimidation. In Illinois, "[a] person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another . . . a threat to perform without lawful authority . . . action as a public official against anyone or anything, or withhold official action, or cause such action or withholding. . . ." 720 ILCS 5/12-6(a)(6). This crime can serve as a RICO predicate act. *See Overnite Transp. Co. v. Truck Drivers, Oil Drivers, Filling Station & Platform Workers Union Local 705*, 704 F.Supp. 859, 862 (N.D. Ill. 1989).

Plaintiffs, however, have not properly pled that Defendants engaged in intimidation. Plaintiffs point to a meeting with Limanni in which he "chastised the[m] . . . , in a loud voice, for not agreeing to let John Kinsella install the [s]tructural [g]ates," and told them that the City of Chicago would take them to court and "force them to vacate the property until the structural deficiencies were remedied at their own expense." Second Am. Compl. ¶¶ 133, 134. They claim that this was an act of intimidation. Limanni, however, as Assistant Corporation Counsel for the City, had legal authority to inform Plaintiffs of the City's legal rights should Plaintiffs' property continue to violate building codes. Intimidation requires a lack of legal authority for the communication. *See* 720 ILCS 5/12-6(a). Plus, this encounter with Limanni is the only instance of alleged intimidation. Plaintiffs do not plead the pattern of racketeering

activity necessary for a civil RICO claim. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985) (discussing that § 1961(5) requires a "pattern of racketeering activity" that includes at least two acts of such activity).

In an attempt to plead that a pattern of activity exists besides the alleged intimidation, Plaintiffs' complaint alleges "a pattern of racketeering activity that *included* the crime of intimidation. . . ." Second Am. Compl. ¶ 189 (emphasis added). The complaint, however, never identifies the other activities. In their Response brief, Plaintiffs allege that the complaint incorporates, without specifically mentioning it, Defendants' interference with interstate commerce by threats in violation of 18 U.S.C. § 1951. Pls.' Resp. Br. 5. This statute criminalizes activity that "obstructs, delays, or affects commerce . . . by robbery or extortion," or any attempt or conspiracy to do so. 18 U.S.C. § 1951(a). A plain reading of the statute shows that the complaint in no way alleges such a violation. A necessary element of extortion in the statute is "the obtaining of property from another." *Id*. at § 1951(b)(2). As Defendants never obtained any property from Plaintiffs, as a threshold matter Plaintiffs fail to plead a violation of § 1951. Therefore, having not alleged a pattern of predicate acts, Plaintiffs have not pleaded a § 1962(c) violation.

Likewise, Plaintiffs have not pleaded that Defendants engaged in a conspiracy to violate § 1962(c) (Count III). A RICO conspiracy charge requires an agreement between parties on the commission of at least two predicate acts. *See United States v. Campione*, 942 F.2d 429, 437 (7th Cir. 1991). Plaintiffs, even in the third iteration of their Complaint, have not pleaded an agreement of even one act, thereby not raising a violation of § 1962(d). Plaintiffs are grasping at straws in their attempts to create RICO claims out what is essentially a bad real estate deal. Accordingly, the Court exercises its discretion and dismisses Counts I and III with prejudice.

### B. 42 U.S.C. § 1985(3) Conspiracy Claim

Count II of the Second Amended Complaint claims that all Defendants engaged in a conspiracy to deprive Plaintiffs of their due process and privileges and immunities' rights in violation of 42 U.S.C. § 1985(3). Without delving into the myriad deficiencies with this claim, the Court finds that it fundamentally misunderstands the scope of this statute. A conspiracy under § 1985(3) occurs when "two or more persons . . . conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the *equal protection* of the laws, or of equal *privileges and immunities* under the laws." 42 U.S.C. § 1985(3) (emphasis added). As an initial matter, this Act does not create

a cause of action for a conspiracy to deny due process. *See Jennings v. Nester*, 217 F.2d 153, 154 (7th Cir. 1954). This element of Plaintiffs' Complaint fails to state a cognizable cause of action. The Fourteenth Amendment privileges and immunities protected by the statute involve those "arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States." *In re Kemmler*, 136 U.S. 436, 448 (1890). The rights to be free of mental stress and anguish, as well as to be protected from financial injuries, are not fundamental rights protected by the privileges and immunities clause. *See Slaughter-House Cases*, 83 U.S. 36, 78-79 (1872).

Finally, even if the Court reads Plaintiffs' Complaint liberally and finds that it alleges a conspiracy to deny Plaintiffs of equal protection, the Complaint does not allege the type of "invidiously discriminatory" racial or class-based animus required for a § 1985(3) conspiracy. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In their Response, Plaintiffs allege that Defendants engaged in their alleged conspiracy due to Plaintiffs' race, Hispanic. This allegation, however, does not appear in the Complaint — again, Plaintiffs' third effort at crafting their claims — even when liberally construed. Without adequately pleading any discriminatory animus behind Defendants' actions,

Plaintiffs' § 1985(3) claim fails. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Count II is dismissed with prejudice.

### C. Procedural Due Process Claim

Plaintiffs claim that the City of Chicago, Kaderbek, Knight, Limanni, and Schmidt violated their right to procedural due process in regard to the lifting of stop work orders on the development of the BV homes (Count VIII). A two-step inquiry exists to analyze a procedural due process claim: (1) has plaintiff been deprived of a protected liberty or property interest; and (2) did this occur without due process. *See Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009).

The analysis here stops at the first inquiry. Plaintiffs attempt to allege that they somehow had a property interest in the city's enforcement of the building code. The City's enforcement of the building code cannot be reasonably construed as the proximate cause of the bank foreclosing on Plaintiffs' property, particularly in that the lifting of the stop work orders gave the developers the opportunity to remedy the house's structural defects. With no deprivation of a property interest, Plaintiffs' procedural due process claim fails. Count VIII is dismissed with prejudice.

### D. Substantive Due Process Claim

Plaintiffs' final federal claim is that the same Defendants named in the procedural due process claim also violated their substantive due process rights (Count IX). Plaintiffs argue that

Defendants engaged in actions against them not related to a legitimate government interest and that shocked the conscience. The parties agree that a rational-basis review is appropriate in this case. This highly deferential standard requires that Defendants' actions be "utterly lacking in rational justification" to give rise to a substantive due process claim. *Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 733 (7th Cir. 2006) (internal quotations omitted). Governmental action has a rational basis as long as a sound reason may be hypothesized. *See Northside Sanitary Landfill, Inc. v. City of Indianapolis*, 902 F.2d 521, 522 (7th Cir. 1990).

In a substantive due process action, "[a] government entity must have exercised its power without reasonable justification in a manner that 'shocks the conscience'. . . ." *Bettendorf v. St. Croix Cnty.*, No. 10-1359, 2011 WL 167030, at *3 (7th Cir. Jan. 20, 2011). Because of this high threshold, the scope of permissible substantive due process claims is "very limited." *Id*.

Plaintiffs' claim falls well short of alleging actions by Defendants that lack any sound reason or that shock the conscience. Rather, many of Plaintiffs' allegations involve Defendants issuing stop work orders and other actions that attempted to fix structural deficiencies in BV houses, including Plaintiffs' second house, in order for them to comply with Chicago's building code. Plaintiffs fail to connect the dots and show how these actions violated their

substantive due process rights, even assuming, *arguendo*, they were part of a conspiracy. The alleged conspiracy was to hide structural defects in the development from BV homeowners and the public. Plaintiffs, however, learned of these defects in April 2006, as well as the proposed remedy for the defects. Second Am. Compl. ¶ 100. Granted, they had already closed on their second BV house at this time, but Plaintiffs do not allege that Defendants denied them an opportunity to inspect this house prior to closing. Further, Plaintiffs' Complaint admits that Defendants took actions to rectify the structural defects, including issuing multiple stop work orders and proposing the steel gate solution. The Court is convinced that Defendants' actions were reasonably related to a legitimate government interest and they do not shock the conscience. Therefore, Count IX is dismissed with prejudice.

### E. Illinois State Law Claims

The Court has dismissed all of Plaintiffs' federal claims. Without a corresponding federal claim, the court will not exercise supplemental jurisdiction over the Illinois state law claims in Counts IV, V, VI, and VII for civil conspiracy, common law fraud, a violation of the Consumer Fraud and Deceptive Business Practices Act, and negligent misrepresentation. *See* 28 U.S.C. § 1367(c).

### F. Claims Against Defendants Knight and Schmidt

As a final matter, the Court dismisses *sua sponte* the claims brought against Defendants John Knight and Ralph Schmidt. Such a

dismissal pursuant to Rule 12(b)(6) is permitted, "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). The Court is not aware of Knight or Schmidt being served with a Complaint or Summons. An attorney has not made an appearance for these Defendants. Knight worked as the Commissioner of the City of Chicago's Department of Buildings in 2005 and 2006, and the City appointed Schmidt as the Supervising Engineer of the BV project. The Second Amended Complaint does not raise any allegations that would make the analysis for Counts I, II, III, VIII, or IX as it pertains to Knight or Schmidt any different than it would for the other Defendants. Accordingly, Counts I, II, III, VIII, and IX against Knight and Schmidt are dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motions and dismisses with prejudice Counts I, II, III, VIII, and IX against all Defendants. The Court declines to exercise supplemental jurisdiction over the Illinois state law claims in Counts IV, V, VI, and VII.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
United States District Court

**DATE:** March 14, 2011