# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7358 | **DATE** | 8/23/2011 |
| **CASE TITLE** | Ruiz vs. Kinsella, *et al.* | | |

**DOCKET ENTRY TEXT**

Pursuant to the Court's June 27, 2011, Order [119], and having reviewed Defendants' accounting of their attorneys' fees and costs and Plaintiffs' response to this accounting, the Court finds that Plaintiffs' counsel, Anthony Peraica, as well as his firm Anthony J. Peraica & Associates, Ltd., are liable to Defendants John Kinsella and Sidney Diamond for $12,500 in sanctions for violating Federal Rule of Civil Procedure 11(b).

■ [ For further details see text below.]

Docketing to mail notices.

# STATEMENT

On June 27, 2011, the Court granted Defendants John Kinsella and Sidney Diamond's Amended Motion for Rule 11 Sanctions. [119] The Court found Plaintiffs' counsel Anthony Peraica and his firm Anthony J. Peraica & Associates, Ltd. liable under Federal Rule of Civil Procedure 11(c) for the appropriate and reasonable monetary sanctions. This liability does not extend to Plaintiffs Jose and Sandra Ruiz personally, nor does it extend to attorneys Frank Avila and David Miley, who filed their appearances in this case after the Court dismissed the federal claims with prejudice. The Court wrote, "Defendants shall provide the Court an accounting of their attorneys' fees and costs incurred in defending themselves against Plaintiffs' § 1985(3) claim . . . ." Defendants filed this accounting on July 11 [120], and Plaintiffs responded on July 22. [123] Although the Court asked Defendants not to reply, they did so on July 29 [127], and also filed a Motion to Supplement the accounting of their attorneys' fees and costs. [128]

As an initial matter, while the Court granted Defendants' Motion to Supplement on August 16, 2011, it will not consider the fees and costs set forth in this supplement to determine the proper sanction. The fees and costs detailed in the supplement all involve work on this sanctions motion, and have nothing to do with Defendants' substantive work on Plaintiffs' § 1985(3) claim. The work was performed after the Court dismissed the § 1985(3) claim. As such, these bills are irrelevant to the Court's June 27 order.

Moving forward, through May 2011 Defendants allege that they incurred $71,131.50 in attorneys' fees and $4,054.50 in costs working on this case. In their initial accounting, Defendants claim to have incurred $62,703.75 in attorneys' fees and $2,343.05 in costs defending themselves against the § 1985(3) claim, and they seek this amount as a sanctions award. This demand strikes the Court as seeking blanket fee shifting, which is not the purpose of Rule 11(c). Rather, as the Seventh Circuit has explained:

> In general, the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11. In an effort to deter future conduct, it may impose a flat sanction, it may strike offensive pleadings, or—more commonly—it may direct the offending party to pay the other party's reasonable attorney's fees. In the latter case, "Rule 11

is not a fee-shifting statute in the sense that the loser pays." *Mars Steel Corp. v. Cont. Bank,* 880 F.2d 928, 932 (7th Cir. 1989). Instead, "Rule 11 ensures that each side really *does* bear the expenses of its own case—that the proponent of a position incurs the costs of investigating the facts and the law." *Id.; see also Johnson v. A.W. Chesterton,* 18 F.3d 1362, 1366 (7th Cir. 1994). But if the court determines that an award of attorney's fees will serve the deterrent purpose of Rule 11, it has an obligation to award only those fees which directly resulted from the sanctionable conduct. Fed. R. Civ. P. 11(c)(1)(A). This ensures that the proponent of a sanctionable position ultimately pays the costs resulting from it, serving a dual purpose of deterrence and restitution, while avoiding blanket fee-shifting, which would have the tendency to overcompensate the opponent and penalize the proponent.

*Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). Given Defendants' broad request, and Plaintiffs' staunch opposition to it, the Court will examine the spreadsheets detailing Defendants' attorneys' fees and costs to determine if the work detailed therein was the direct result of Plaintiffs' sanctionable claim.

Plaintiffs' Second Amended Complaint raised five claims against Defendants, four of which were Illinois state law claims for civil conspiracy, common law fraud, a violation of the Consumer Fraud and Deceptive Business Practices Act, and negligent misrepresentation. Upon dismissing with prejudice all federal claims in the Second Amended Complaint, the Court declined to exercise supplemental jurisdiction over these state law claims. ECF No. 96, Mar. 14, 2011. While the Court acknowledges that some of the work overlaps between the § 1985(3) and state law claims, a review of defense counsels' billing records shows that many of the claimed fees and costs do not all fall under the Court's June 27 Order.

The Court does not review these billing records with a fine-toothed comb to calculate the exact time that defense counsel worked on this case. *See Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). However, because defense counsel has provided a description of the work done on each line item in its bills, the Court can at least attempt to make a rough determination of the amount of work that falls within the scope of the June 27 Order.

Attorney Daniel Stanner billed the most on this case for Defendants, as he claims to have worked 108 hours at $400 an hour. Some of the line items in his bill, however, do not relate (or only partially relate) to the § 1985(3) claim. For example, Stanner claims to have worked 6.25 hours on December 16, 2009, researching the Consumer Fraud claim and doing other work. While some of this other work may have been devoted to the § 1985(3) claim, the Court cannot determine this. Of note, only the fraud claim is specifically mentioned in this line item; work on the federal claim is not mentioned. This is just one of many line items in which the § 1985(3) claim, or something clearly related to this claim, is not mentioned in Stanner's billing records or the billing records from the other attorneys who worked on this case. While such lump billing is not improper, in this case it fails to support Defendants' hefty sanctions demand. Defendants read *Fox* too expansively, especially considering that it addressed attorneys' fees in civil rights cases pursuant to 42 U.S.C. § 1988. The case did not absolve the duty for the party seeking attorneys' fees to establish its entitlement to the award. *Id*. Rather, it simply affirmed the standard by which a district court should determine the appropriate fees award.

Numerous other examples exist in Defendants' billing records of time they wish to include in the sanctions award that does not fall under the scope of the Court's June 27 Order. For example, they seek to recover for 6.75 hours of work Stanner did on this sanctions motion and associate John Fitzgerald's more than nine hours of work on the sanctions motion. As explained above, this work and all other work on this or any other sanctions motion does not fall within the scope of the Court's Order. The Court also agrees with

| STATEMENT |
|---|
| Plaintiffs that the time defense counsel spent working on the bankruptcy case does not constitute work done in defense of the § 1985(3) claim. Further, given that Plaintiffs filed a five-count complaint against Defendants, the Court presumes that much of the non-specific time entries for meetings, communications, and research do not relate to the § 1985(3) claim, but rather to the four state law claims.<br>      While the Court did not require an exact accounting of Defendants' attorneys' fees and costs, it did expect a more accurate and reasonable accounting. Under Rule 11, the Court has the discretion to use its expertise of the case to craft an appropriate sanction. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990). Using this discretion, the Court finds that $12,500 is an appropriate sanction for Plaintiffs' counsel. While this amount may represent a recovery of less than the time that Defendants' counsel billed for work on the § 1985(3) claim, it provides Defendants with some restitution and serves as a significant enough punishment to deter Plaintiffs' counsel from filing frivolous and meritless pleadings. To emphasize, Plaintiffs' counsel Anthony Peraica, as well as his firm Anthony J. Peraica & Associates, Ltd., are jointly liable for these sanctions. Plaintiffs themselves are not liable for this amount. |